Good morning, and may it please the court. My name is Peter Henderson. I represent Tierra Anderson in this case. There are a number of errors that ultimately affected the sentence in this case. And I think that the most obvious one was on count two, where the government pursued an invalid legal theory of aiding and abetting liability as to the distribution of heroin from Frankie Ray to Ian Buchanan. Peony is the seminal case on aiding and abetting liability and held in these exact circumstances, that a person who sells contraband to another person who then sells contraband to another person is not responsible for that third person's distribution or possession. There are a number of reasons for that. The law has become more refined since Peony. Nowadays, we say a defendant must take an affirmative act in furtherance of an offense with the intent of facilitating that offense. And it's clear on this record that Teria Anderson had no idea about this offense. She had no knowledge. Mr. Henderson, this may or may not help clarify this. Anderson, of course, is in a long-term relationship, or at least so one could conclude, with Sublette. But are we somehow saying that she neither knew nor cared how Sublette handled these drugs afterwards? He could have divided them up into user quantities. He could have used a lower-level distributor, could have sold them all. But her interest stops at that level. Is that what you're saying? Correct. In other words, she doesn't care who he sells the drugs to so long as he sells the drugs. Or in what form. He could have sold them at retail himself, presumably. Exactly. And so, you know, she's selling quantities, let's say, 100 grams or so. He might sell those to end-users and make the money that way. He may repackage it, you know, cut it with Dorman and then sell it to other sellers. She doesn't care. She has no interest in how the drug is sold. She just wants to make sure she gets paid, as I think the testimony at trial about her being very insistent that she get paid the correct amount showed. So what about this shred of evidence where we have Sublette saying to Ray, if you have a problem with it, namely that Kansas City stuff, I can send back and ask. Does that somehow bring her into the arrangement? I guess I don't see how it would. She has no involvement with how Sublette conducts his business. It's, you know, I guess it's very similar. If you put that in a peony context, right, if the third party there buys counterfeit bills and says, gosh, these don't look convincing at all. Maybe the seller says, the middle person says, well, hey, I can go back and try to get. I don't. That does nothing for the first person's interest or knowledge or affirmative act of assistance. Well, look, she argues that she had no stake in Sublette's subsequent distribution of the drugs, but she had an interest in Sublette's sales on the occasions when she fronted the heroin to Ray. She surely has some sort of an interest in Ray's success, right? It's too attenuated. It may be that she aided Sublette's distribution. There's very thin evidence. It seems like he was doing his own thing. But there's just nothing to connect Anderson and Ray. And it's Ray's distribution that's important. She has to know that he is going to distribute heroin, and she has to do an act that assists him in distributing the heroin. Does she have to know Ray or just a person in Ray's position? Or are you arguing that neither one is met? I mean, I think neither one is met. The government's theory at trial was it was Ray. And so that's why I'm referring to Ray. There is no other person. But she had to know that that person was selling drugs. And there's just no evidence. Sublette got on the stand and did not discuss, you know, what he had told Anderson about his own operation. He just said yes. Well, that's why I asked whether it would be, whether hypothetically if Sublette was the one who broke it down to user quantities, she would be just as happy. That gets her She just wanted to be paid. And that's the whole story of this case. We have this web of independent dealers who are all working for themselves. They all have multiple sources of supply. They all have multiple customers. They interact, but that doesn't create the sort of liability that the government thinks it does. Is there any evidence that she knew that or would have cared that Sublette was conducting his sales by further fronting? I don't think there's any evidence that she knew that. I don't think the government points to any. I mean, we clearly have sufficient evidence to say she conspired with Sublette and Sublette conspired with Ray, but there's no overarching link. And so in a way, this is a lot like Townsend or LeChuga, where we have different conspiracies between two people that are linked together, but that doesn't create one big conspiracy. Mr. Henry, what do you see as the difference between the conspiracy count and the aiding and abetting count? I'm puzzled by the fact that you accept the conspiracy conviction count one, but not the aiding and abetting conviction count two, because the kind of argument you're making seems to me equally applicable to both or to neither. But to distinguish the one from the other seems hard. So could you tell me why you are distinguishing the aiding and abetting conviction? The distinction in my mind comes from the standard of appellate review that is applied. And the way that I would explain that is to say the jury was properly instructed on buyer-seller, was properly instructed on what a conspiracy is. And there is evidence, sufficient in my view, to say that she conspired with someone, with her uncle, for example, who she coordinated this sale with, with Sublet when he stored some heroin for her. Yeah, let me follow up. If she conspired with her uncle, it's very difficult to see why the conspiracy conviction includes the enhancement for resulting in serious bodily injury. That enhancement comes from what happened farther down the chain. And that's why I don't understand why you are accepting the conspiracy with serious bodily injury while you say we should reject the aiding and abetting with serious bodily injury. I frankly, I think that the law ought to be that serious bodily injury only applies when you can show that the conspiracy that the person was a part of distributed the heroin. So Mr. Henderson, can I just interject? I thought that part of your answer to Judge Easterbrook would have related to your concern about the jury's verdict on serious bodily injury, which says with respect to count one, count two, or both, we the jury find that the government proved. So we don't know if they found serious bodily injury on but not count two, or count two, but not count one, or both of them. So part of the disambiguation that I think Judge Easterbrook is looking for depends on whatever this means. And we don't know what it means. Right. I mean, it sure seems like in a practical sense, that what we're looking for is are you responsible for the distribution of heroin that caused death or caused serious bodily injury? What, as I read the court's cases, including United States versus Walker, the court seems to have said, it doesn't matter how linked you were to the particular overdose, so long as you can trace the drug back to an act that you committed in the conspiracy. And so the jury was entitled to find that there's a conspiracy here. And it's hard to say that there's insufficient evidence that that conspiracy did not include this heroin, but included different heroin. Now, certainly, the jury could have come to that conclusion. But we don't know what the jury found, though, on serious bodily injury. It would have been entirely possible, if this had been properly broken up, for the jury to say we don't find serious bodily injury on count one, we do find serious bodily injury on count two, or vice versa. Or yes, we do find on count one because of what you say about conspiracy. But we don't think that the aiding and abetting went far enough to tie it in for count two. Yes, that's right. And, you know, I think I suppose my real answer to Judge Easterbrook's question is, it shouldn't make a difference because there's no conspiracy here that involves the distribution of heroin to Mr. Buchanan. My reading of the law says the serious bodily injury or this court's cases say the serious bodily injury enhancement applies even if you don't make that link so long as you link the actual drug, and it eventually made its way into the stream. But so that's why that hasn't been briefed. But the verdict form, exactly as you're saying, Judge Wood, doesn't disambiguate why the jury founds Ms. Anderson responsible for causing a serious bodily injury. We think it's probably more about count two. That was what the government was hammering home. And count two, it's just an invalid legal theory. But yes, we are seeking a more modest remedy. We're not seeking acquittal on all counts. We're seeking resentencing on count one. The other point, too, that I want to make sure doesn't get lost is that the only link that actually linked Ms. Anderson to the heroin was inadmissible hearsay. The government in a pretrial filing thought that Mr. Buchanan himself was a member of this conspiracy. They've abandoned that and so for that reason thought, well, this can come in. But that was a plain error. That's the only link. That's the only way that the jury could know that this heroin is in any way linked to Ms. Anderson. And so for that reason, we think that the enhancement should be vacated as well. But unless the court has questions on other aspects of the brief, I will save my remaining time for May it please the court. My name is Taylor Kirkland. I represent the United States of America in this appeal. I want to start you right out because I think count two is a problem for the government. I do not see how the conduct here is distinguishable from the conduct in Peony. Once she sold the heroin to Sublet and Sublet paid her for it. Her role seems to have been complete. Is there any evidence that she knew that Sublet sold the heroin to another dealer instead of just to consumers? Where in the record could we find that evidence? So your honor, I think that there are a few pieces of evidence that would support that inference. Now the wiretaps that involved that picked up conversations involving Anderson were not Buchanan's overdose did not involve Anderson. So we agree that there's not evidence on that side of the timeline. However, after Buchanan's overdose in May of 2017, there were phone calls with Anderson where she advised Sublet about the incoming heroin supply. In addition, government exhibit 110, which is a phone call between Sublet and Ray the day before Buchanan's in which two very important things happen. First, Sublet relays information about the incoming China white heroin to Ray. And that's information about the incoming heroin supply that Anderson had provided to him. And second, with respect to the Kansas City heroin, Sublet monitored Ray's progress in selling that heroin. And when Ray told him he had difficulty, Sublet immediately offered to quote, send back and ask to see what could be done about that. So let me just say, Mr. Kirkland, I find those very inconclusive links because if I were trying to buy something, you know, from a supplier, maybe they would tell me that they were low on supplies, but they would say we have something coming in. Now that doesn't tell me that the upstream supplier is in any kind of deal with the downstream buyer that the middleman is talking to. It's just, don't worry, I'll have something to sell to you soon. And as far as this call between Sublet and Ray, again, you can talk about the China white, but I don't see how that links Ray to Anderson. It's really just Ray is a supplier, the name of the variety of heroin he's about to get. This I can send back and ask, I don't know. I don't really see why that links Anderson in. She might do nothing. She might be responsive, but it's just a business deal. Well, if I could respond to those two points separately, Your Honor, dealing specifically with the two varieties of heroin that are the incoming China white shipment, I think that serves a very important objective for both Sublet, Ray, and Anderson. And I think it's an objective that is distinguishable from the ordinary consumer retail experience that is often the example in the drug cases, the drug fracking cases. Here, the knowledge of the incoming shipment, as Sublet explains in this call, was very important because it triggered Ray's need to sell the Kansas City heroin that had been fronted to him before that incoming shipment of China white heroin came. Why does that implicate Anderson, though? I mean, this is between Sublet and Ray, and just because we know from the omniscient observer point of view that it happens to be your deal or be your deal or see, I don't see how that helps you. Well, I think it's very important that Anderson was feeding this information into the supply chain, into the distributors, and then was giving them information that would allow them to move the Kansas City heroin quickly in order to make room for the new product. With respect to the information about the Kansas City heroin in this call, I think the context of the call is very similar. Anderson offers this up very readily, and Ray, in response to it, is very nonchalant about the idea of returning or potentially returning hundreds of grams of product. So both of those, I think, were circumstantial evidence that immediately predated Buchanan's overdose that suggested that Anderson had knowledge and participation in the scheme in the distribution here. Well, I don't see the link to her knowledge. I really just don't. I mean, Sublet doesn't even refer to her. He doesn't get to her. He doesn't, you know, it's just he's talking about a product that he has to sell, and it's in Sublet's interest for his downstream dealer to have the capacity to move the new shipment to. I just don't, I don't see it. Well, respectfully, Your Honor, with respect to the point about Sublet not getting back to Anderson, that's only because Ray says that he's already halfway through the pack of heroin. There's no need to go back. And again, I would have the lack of him going back. Your need is to tie Anderson into this, and all you have is speculation. Well, Your Honor, I think that it, I'm sorry, Judge Rober. Yeah, I don't want to double team you, but maybe, you know, as far as I can tell, the only evidence tying the orange heroin to Buchanan's overdose is Buchanan's own out-of-court statement. But that statement wouldn't be admissible for the truth of the matter. I mean, even if we say it provided context to Ray's statement about Kansas City SMAC, Ray didn't say anything about the orange heroin causing the overdose. What this seems to me is like an end run around the hearsay rule that the court cannot admit Buchanan's statement for the truth of the matter. I mean, Buchanan isn't part of the conspiracy. He's just a customer and a consumer of the drug, right? So we do agree with that, Your Honor. Buchanan is not a member of the conspiracy, and so the admissibility of his comments during that call with Ray are admissible to give context to what Ray says during that call. But you don't learn much from what Ray says. The critical sentence in that call comes from Buchanan, not Ray. Well, Your Honor, I think that I would slightly disagree with that. I think that Ray's call is, or I'm sorry, Ray's statement during that call is critical in the sense that it confirms that he had dealt the Kansas City heroin to Buchanan. And I think given the timing of that relationship to the other telephone calls between Sublette and Ray and between Ray and Buchanan, showing that the heroin transaction to Buchanan had taken place two days earlier would confirm that. Just briefly on that particular telephone call, we do think that Buchanan's statements here are admissible to give context. And this case is much like what happened in Kiroz, where the defendant did not object to the admissibility of these non-conspirator statements. This court held that those non-conspirator statements were nonetheless admissible to give context to the statements of the conspirators during the call. That's exactly what happened here. Anderson had every opportunity to object. These telephone calls not only were the transcripts given to the jury, but they were played from the jury. Her attorney explicitly said he had no objection to the admissibility of these. And the appellant has pointed out the Santiago property was for the court, but there wasn't an objection to that either, any response to it as well. So I think that here the court should take the same route that the court in Kiroz found. This is just plain error, and I don't think that Anderson can show that the admissibility of these statements would be enough to constitute plain error. As to- So all Ray says, I just need to like wrap this up. Ray says, what's up? Ray says, what happened to you? Ray says, that Kansas City smack ain't no joke, huh? And then Ray says, I'll be on the east side. What's up? That's cool. How that ties this together is very difficult for me to see. All of the things you're relying on, and you're relying on them for the truth, come from what Buchanan says. I went out and dude on that orange, whatchamacallit, and then quite a few things, and then actually, depressingly and shockingly, he seems to indicate he wants more. But I just don't see how you can get there from what Ray says. Well, I think there are several pieces of evidence that demonstrate the reliability of what Buchanan's saying in this call. But are you saying it's admissible for the truth, what Buchanan says? So I'm not, Your Honor. I'm saying that what Buchanan says is a contextual statement that puts Ray's statements in context. Nonetheless, there was evidence that demonstrated that, for instance, this particular brand of heroin that Anderson was putting into the distribution chain was orange, that that was a very unusual color for heroin, that it stood out in people's minds. And then there's also the timing of these telephone calls, which show that the deal on May 30, I'm sorry, May 30th to Buchanan happened right after, I mean, two hours after Sublet started leaning on Ray to start moving the Kansas City heroin before the China White came in. So there are these pieces of evidence in the record that demonstrate the reliability of what's going on here in the statements that are made. But again, we do think, I mean, we agree that Buchanan is not a member of this conspiracy, and that the statements that Ray were making were the ones that were admissible under 801D. Just briefly, because I see my time is running out, I just want to briefly touch on the appellant's challenge to the evidence relating to the substantial risk of death. This is the testimony that was put in the record about Buchanan's overdose, the facts of it, and what happened to him in the hospital. I just want to emphasize the fact that Dr. Scharr, the physician who testified in the trial and had treated Buchanan at the hospital, he gave an expert opinion that explicitly stated that Buchanan had suffered a serious risk of bodily injury as a result of the overdose. So, Mr. Kirkland, I think if we get that far, I totally agree with you that sort of the ex-post, everything worked out fine in the end approach cannot possibly be the law on serious bodily harm. My concern, which the government doesn't really address in its brief, is this ambiguity in the jury's verdict on this point, and the inability to figure out whether the jury finds serious bodily harm on count one, or whether it finds it on count two, or whether it finds it on both, because we just have or, and that could be important depending on what we think about the aiding and abetting issue. So, your point's well taken, Your Honor, and I think the court will see, and the appellant points this out in his reply brief, the government has not contested the appellant's argument that if count two is vacated, that the case should be remanded for resentencing, and I think Your Honor is correctly picking up that that's precisely because of that ambiguity in the in the jury verdict, and we don't. So, if the court has no further questions, the government would ask that the case be affirmed. Thank you. Thank you, Mr. Kirkland. Anything further, Mr. Henderson? Unless the panel has questions, I'm content to sit down and say goodbye. Seeing none, the case is taken under advice.